UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Scottrade, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:07-cv-01982 CAS |
| ) | |
| Modern Energy Corporation; ) | |
| First Public Securities Transfer ) | |
| Corporation; Ridge Clearing & Outsourcing ) | |
| Solutions, Inc.; Penson Financial Services, Inc., ) | |
| and E*Trade Financial Corporation; ) | |
| ) | |
| Defendants. ) | |

## PERMANENT INJUNCTION

On December 20, 2007, at a hearing in this matter in open Court, this cause was set for trial on February 6, 2008 upon those issues raised by Plaintiff's Verified Complaint for Injunctive and Declaratory Relief (the "Complaint") that remained unresolved by this Court's Summary Declaratory Judgment entered December 20, 2008. Concurrently with granting Plaintiff's Motion for Summary Judgment, the Court issued a Preliminary Injunction. In the Preliminary Injunction, the Court provided further notice to all Defendants that this matter was set for trial on February 6, 2008, at which time the Court would determine the appropriate form and nature of final and permanent relief to be awarded.

Based upon all the evidence submitted, the Court finds that:

1. This Court has jurisdiction over the parties and venue is proper in this District pursuant to 15 U.S.C. § 78aa.

2. Between October 23 and 25, 2007, Plaintiff Scottrade, Inc. ("Scottrade") sold on behalf of its customer 1 million shares of Defendant Modern Energy Corporation ("Modern Energy") common stock at a price of $ 0.01 per share (the "Trades").

3. At the time of such sales, Scottrade in fact owned, for the account of the customer in question, 1 million shares of Modern Energy common stock, said stock being held through Scottrade's account with the Depository Trust Company ("DTC").

4. After issuing press releases announcing that it would be taking "unique corporate action" to reduce the outstanding public float of its common stock without effecting a reverse stock split, and first announcing that the effective date of the transaction would be November 1, 2007, then later announcing that the dividend portion of the "unique corporate action" would be effective October 16, 2007, on October 19, 2007 Modern Energy purportedly effected a transaction which it now admits was (intended to be) a 1 for 1,000 reverse stock split.

5. It is undisputed that Modern Energy did not: (a) give notice to its shareholders of a shareholders meeting at which shareholders would be permitted to vote on the proposed transaction, (b) hold a shareholders meeting at which shareholders voted on the proposed transaction, (c) obtain signed written consents of all of its shareholders to the proposed transaction, or (d) file with the Wyoming Secretary of State adequate amendments to its articles of incorporation describing in any way the proposed transaction.

6. Without taking the steps described in Paragraph 5, above, Modern Energy could not effect a reverse stock split, because Wyoming law – under which Modern Energy is organized – requires corporations to take the enumerated actions before a reverse stock split can be effected. Wyo. Stat. §§17-16-1001 – 17-16-1006.

7. It is undisputed that Modern Energy did not provide any written notice of its reverse stock split to the National Association of Securities Dealers or its regulatory successor, the Financial Industry Regulatory Authority, or provide them with written notice of the information specified in SEC Rule 10b-17, 17 C.F.R. §240.10b-17 at least 10 days before October 19, 2007 -- the date on which Modern Energy purports to have effected its reverse stock split.

8. Pursuant to SEC Rule 10b-17, Modern Energy's attempt to effect a reverse stock split without giving such notice to the NASD operated as a "deceptive device" within the meaning of Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b).

9. Although the Court finds that Modern Energy's purported reverse stock split is a nullity under Wyoming law because Modern Energy did not take the steps necessary under Wyoming law to secure the shareholder approval needed to effect a reverse stock split, the Court also finds that Modern Energy's reverse stock split would otherwise be void pursuant to Section 29 of the Securities Exchange Act, 15 U.S.C. §78cc because Modern Energy's attempt to effect the reverse stock split operated as a "deceptive device" violative of Section 10(b) of the Securities Exchange Act.

10. Defendants have taken actions, including the issuance of "buy-in" notices, to force delivery of the post-split shares they believed they had purchased in the Trades.

11. Scottrade would be irreparably harmed and will lack an adequate legal remedy if the buy-ins are executed.

12. It is undisputed that Plaintiff Scottrade, Inc., Defendants Ridge Clearing & Outsourcing Solutions, Inc., Penson Financial Services, Inc., and E*Trade Financial Corporation, and/or any of their respective subsidiaries or any person acting on behalf of any of them, did not

violate any applicable securities laws, rules, or regulations concerning the Trades and that this Permanent Injunction is entered in recognition of the collateral consequences attendant to the Court's findings and conclusions set forth in its Summary Declaratory Judgment entered on December 20, 2007 in this matter. Therefore, each of these parties shall have no liability with respect to any claims arising from or related to the Trades, otherwise than to comply with the terms of this Permanent Injunction, and shall not be subject to any liability for complying with this Permanent Injunction.

13. At the times of Scottrade's sales of Modern Energy common shares described above, transactions in Modern Energy common stock effected in the over the counter market (as were Scottrade's sales) were settled through the "Continuous Net Settlement Process" operated by the National Securities Settlement Corporation.

14. The Depository Trust Company treated the reverse stock split Modern Energy purported to effect as a valid corporate action, and made entries in Scottrade's account with the Depository Trust Company which created the appearance that the number of Modern Energy common shares held for Scottrade's account with the Depository Trust Company was 1/1,000 of the quantity of Modern Energy common shares actually held by the Depository Trust Company for Scottrade's account.

15. The Depository Trust Company delivered into the Continuous Net Settlement System a sufficient number of Modern Energy common shares to settle all of the sales transactions referenced in Paragraph 2, above, although the quantity delivered was incorrectly assumed to represent only 1/1,000 of the shares traded for the customer.

16. The undisputed evidence outlined above establishes that Scottrade is entitled to prevail on its claims.

17. The public interest is served by the issuance of a permanent injunction enjoining Defendants from executing buy-ins as a mechanism for settling the Trades.

It is therefore Ordered that:

Defendants and their officers, directors, agents, servants, partners and employees are hereby permanently enjoined from:

a. Taking any act designed to effectuate Defendant Modern Energy's unauthorized "mandatory exchange" of one (1) share of a new issue of common stock for each one thousand (1,000) outstanding shares of its common stock, to include any act by Defendants designed to effectuate or assist Modern Energy in the effectuation of such transaction, and

b. Taking any act with respect to Defendants' Ridge Clearing & Outsourcing Solutions, Inc., Penson Financial Services, Inc., and E*Trade Financial Corporation threatened "buy-ins" of up to 999,000 shares in Modern Energy's newly (and improperly) issued common stock (symbol MDNO, CUSIP 607587300) for Scottrade's account or any other act by any Defendant designed to effectuate the settlement of the purported trades in Modern Energy common stock under the aforesaid ticker symbol and CUSIP by Scottrade between October 23 and 25, 2007.

A true copy of this Permanent Injunction shall immediately be served on the Defendants by delivery of the same to their Counsel.

The cash bond in the amount of One Hundred Thousand Dollars originally posted by Plaintiff Scottrade as a condition of the Temporary Restraining Order issued in this matter and maintained as a condition of the Preliminary Injunction issued in this matter is hereby released. This Permanent Injunction supersedes the Preliminary Injunction dated December 20, 2007.

Nothing in this order shall have the effect of altering any other order or ruling made by the Court.

The Court retains jurisdiction over this matter for the purposes of enforcing and applying this Permanent Injunction.

Entered: 2/7/08, at 9:00 a.m.

_____
United States District Judge